UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

*In re: Material Witness Lukas Zak*   )
               )
               )  *No. 2:17-mj-00154-JHR*
               )  *FILED UNDER SEAL*
               )  *(UNSEALED 5/16/19)*
               )

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*In re: Material Witness Jaroslav Hornof*   )
               )
               )  *No. 2:17-mj-00174-JHR*
               )  *FILED UNDER SEAL*
               )  *(UNSEALED 5/16/19)*
               )

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*In re: Material Witness Damir Kordic*   )
               )
               )  *No. 2:17-mj-00184-JHR*
               )  *FILED UNDER SEAL*
               )  *(UNSEALED 5/16/19)*
               )

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*In re: Material Witness Peter Demcak*   )
               )
               )  *No. 2:17-mj-00185-JHR*
               )  *FILED UNDER SEAL*
               )  *(UNSEALED 5/16/19)*
               )

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*In re: Motion for Conflict Counsel*	)
	)
	)	No. 2:17-mc-00192-JHR
	)	*FILED UNDER SEAL*
	)	*(UNSEALED 5/16/19)*
	)

*************************************************************************

*In re: Motion for Return of Property*	)
	)
	)	No. 2:17-mc-00199-JHR
	)	*FILED UNDER SEAL*
	)	*(UNSEALED 5/16/19)*
	)

*MEMORANDUM DECISION ON MOTIONS TO DISSOLVE MATERIAL WITNESS WARRANTS, MOTION FOR CONFLICT COUNSEL, MOTION TO QUASH, AND MOTION FOR RETURN OF PROPERTY*

Four material witnesses, Slovak citizens Lukas Zak and Peter Demcak, Czech citizen Jaroslav Hornof, and Croatian citizen Damir Kordic, petitioned for release from material witness arrest warrants issued by this court.[1] Each filed a motion or motions seeking to dissolve his arrest warrant, modify the conditions of his release, or be deposed pursuant to Federal Rule of Criminal Procedure 15.[2] The material witnesses also collectively filed a motion for the return of property

---

[1] The material witness warrants were issued on the following dates: Zak, July 17, 2017; Hornof, August 9, 2017; Kordic and Demcak, August 21, 2017.

[2] These motions, filed by docket, are as follows: Zak: Motion To Discharge Warrants, Modify Conditions of Release, or Take Depositions Pursuant to Federal Rule of Criminal Procedure 15, and for Expedited Briefing and Hearing ("*Zak* Warrant Motion") (ECF No. 15), as supplemented by Supplemental Memorandum in Support of Motion To Discharge Warrants (ECF No. 19), Second Supplemental Memorandum in Support of Motion To Discharge Warrants (ECF No. 20), and Supplemental Memorandum Summarizing First Circuit Precedent That Grand Jury Matters Are Not Criminal Proceedings (ECF No. 32), *In re Material Witness Lukas Zak* ("*Zak*"); Hornof: Emergency Motion of Jaroslav Hornof for Discharge from Constructive Detention, To Take Deposition Pursuant to Federal Rule of Criminal Procedure 15, and for Expedited Briefing and Hearing (ECF No. 4) and Motion of Jaroslav Hornof To Dissolve Arrest Warrant or for Immediate Deposition and Release Without Restriction (ECF No. 6) (together, "*Hornof* Warrant Motions"), *In re Material Witness Jaroslav Hornof* ("*Hornof*"); Kordic: Emergency Motion of Damir Kordic To Reconsider Order for Arrest Warrant and To Revoke Warrant for His Arrest (ECF No. 5) and Emergency Motion To Dissolve Warrants, Release Witnesses or for Depositions (ECF No. 10) (together, "*Kordic* Warrant Motions"), *In re Material Witness Damir Kordic* ("*Kordic*"); and Demcak: Emergency Motion of Peter Demcak To Reconsider Order for Arrest Warrant and To Revoke Warrant for His Arrest (ECF No. 5) and Emergency Motion To Dissolve Warrants, Release Witnesses

that they alleged had been confiscated by the United States Coast Guard, namely, their passports and visas. *See* Motion To Return Property Pursuant to F.R. Crim. P. 41(g) ("Motion To Return Property") (ECF No. 1), *In re Motion for Return of Property*.

In connection with those matters, the government filed a motion for the appointment of conflict counsel, *see* United States' Motion for Conflict Counsel ("Conflict Motion") (ECF No. 1), *In re Motion for Conflict Counsel*, and a motion to quash subpoenas served by material witness Zak on four United States Department of Homeland Security officials, *see* Government's Motion To Quash Subpoenas Served on Four Department of Homeland Security Officials ("Motion To Quash") (ECF No. 28), *In re Material Witness Lukas Zak*.

An evidentiary hearing was held before me on August 24, 2017, at which all four material witnesses were present, had the assistance of an interpreter, and were represented by counsel, and counsel for both sides argued orally.[3] I questioned all four material witnesses on the conflict of counsel issue and admitted several exhibits without objection. During the hearing, I orally granted the Conflict Motion to the extent that I questioned each of the material witnesses under oath, and otherwise denied it, determining that no actual or apparent conflict existed, granted the Warrant Motions to the extent that I ordered the government to depose the four material witnesses within 30 days, following which they were to be released from the material witness warrant conditions and allowed to depart the United States, and deemed the Motion To Return Property moot.[4]

---

or for Depositions (ECF No. 10) (together, "*Demcak* Warrant Motions"), *In re Material Witness Peter Demcak* ("*Demcak*"). I shall refer to all seven motions, collectively, as the "Warrant Motions."

[3] Five other crew members were also detained. No material witness orders were ever sought as to four of those crew members. On July 17, 2017, I issued a material witness order as to the fifth crew member, Oleksandr Zakharchenko, but he was released prior to the August 24, 2017, hearing.

[4] Depositions of the four material witnesses were taken on September 11 and 12, 2017. They departed the United States on September 14, 2017, following an emergency hearing during which I granted the parties' cross-motions for the material witnesses' release to the extent that I permitted that release, but otherwise denied the government's cross-motions to the extent that it sought release on certain conditions, and denied the material witnesses' cross-motions, without prejudice, to the extent that they sought to vacate trial subpoenas served on them. *See* ECF Nos. 46-50, *Zak*; ECF Nos. 17-21, *Hornof*; ECF Nos. 15-19, *Kordic*; ECF Nos. 15-19, *Demcak*.

I write to set forth my grounds for my August 24, 2017, rulings and to clarify that those rulings mooted the Warrant Motions, to the extent that they sought additional or alternative relief, as well as the government's motion to quash in the *Zak* case.

**I. Background**

Together, the material witnesses served as crew members aboard the *Motor Vessel* ("*M/V*") *Marguerita*, whose owner, known as "Reederei," and operator, known as "MST," have been indicted on criminal charges related to, *inter alia*, the alleged discharge of oil waste in violation of various federal laws. *See* Indictment (ECF No. 1), *United States v. MST Mineralien Schiffarht Spedition und Transport GMBH, et al.*, No. 2:17-cr-00117-NT (D. Me.).

The vessel was inspected by United States Coast Guard officials from July 7-9, 2017, in the port of Portland, Maine. The material witnesses and other crew members were detained onboard for approximately a week, following which MST and Reederei entered into a security agreement with the government pursuant to which the material witnesses were housed at a motel in the Portland, Maine, area and provided their salaries and a *per diem* allowance to cover meals and expenses. The United States Coast Guard seized their passports.

In substance, the material witnesses asserted in the Warrant Motions that they had testified before the grand jury to everything that they knew about any topic of possible interest and that, to the extent that the government desired their testimony at trial, a deposition pursuant to Rule 15 would suffice. Accordingly, they argued, they should be released and allowed to return to their home countries.

In its Conflict Motion, the government requested that the court inquire of the four material witnesses as to whether a conflict of interest existed because they were represented by a single attorney, or, in the alternative, that the court appoint conflict counsel to engage in the same inquiry.

*See* Conflict Motion at 1. The government also asserted that the material witnesses' attorney might have a conflict of interest as between the material witnesses and the corporate defendants. *See id.* at 3.

## II. Discussion

### A. Government's Motion for Conflict Counsel

Conflict of interest inquiries in this district are governed by the Maine Rules of Professional Conduct. *See Concordia Partners, LLC v. Ward*, No. 2:12-cv-138-GZS, 2012 WL 3229300, at *1 (D. Me. Aug 6, 2012); Loc. R. 83.3(d). Maine's Law Court "has held that disqualification of an attorney is appropriate only where the moving party produces evidence supporting two findings: (1) 'continued representation of the nonmoving party by that party's chosen attorney results in an affirmative violation of a particular ethical rule' and (2) continued representation by the attorney would result in 'actual prejudice' to the party seeking that attorney's disqualification." *Concordia*, 2012 WL 3229300, at *1 (quoting *Morin v. Me. Educ. Ass'n*, 993 A.2d 1097, 1100 (Me. 2010)). Rules 1.7 of the Maine Rules of Professional Conduct provides, in relevant part:

> **(a)** Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict-of-interest. A concurrent conflict-of-interest exists if:
>
> (1) the representation of one client would be directly adverse to another client, even if representation would not occur in the same matter or in substantially related matters; or
>
> (2) there is a significant risk that the representation of one or more clients would be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
>
> **(b)** Notwithstanding the existence of a concurrent conflict-of-interest under paragraph (a), a lawyer may represent a client if:
>
> (1) the lawyer reasonably believes that the lawyer would be able to provide competent and diligent representation to each affected client; and

5

(2) each affected client gives informed consent, confirmed in writing.

Me. R. Prof. Conduct 1.7.

In its motion, and at oral argument, the government advanced four arguments in support of its position that the witnesses' shared counsel, Edward MacColl, Esq., had several possible conflicts of interests arising from his participation in this case.

First, it argued that, because Attorney MacColl identified himself as representing several corporate entities related to this case at the inception of the *M/V Marguerita* investigation, a conflict might exist between his representation of those entities and, later, the material witnesses. *See* Conflict Motion at 3-4. The government noted that on or about July 8, 2017, shortly after Coast Guard officials first boarded the ship, Attorney MacColl told investigators that he represented the ship's owner, operator, and underwriter. *See id.* at 2. The next day, he arrived at the ship accompanied by George Chalos, Esq., an attorney who represents the now-indicted corporate defendants, and offered the crew members representation while also informing them that he worked for "the company." *Id.* At the hearing, the government entered into evidence a copy of the ship's log book in which Attorney MacColl identified himself as an attorney for the corporate defendants.

At the hearing, Attorney MacColl confirmed that he responded to the ship at the request of the corporate entities involved and that, at the outset of the investigation, the lawyers present did not immediately determine who would represent the corporate interests and who would represent the crew members. He also confirmed that he had previously represented members of the organization that provided the *M/V Marguerita's* financial underwriting. He stated, however, that once it became clear that the material witnesses would be in need of counsel, he and Attorney Chalos decided that Attorney MacColl would represent the witnesses, and the witnesses alone. He

confirmed that from that point forward, he has not represented the corporate entities involved in the investigation.

Based on Attorney MacColl's representations, I found that no apparent or actual conflict existed with respect to any representation of the corporate defendants and the material witnesses. In addition, I note here that throughout the course of this case, each of the four witnesses who has appeared before me has been zealously represented by Attorney MacColl, without any apparent conflict. What he may have said aboard the ship is different, and removed, from his filing of documents and other efforts on behalf of the material witnesses both in and out of court. The government made no proffer, other than the ambiguous statements allegedly made by Attorney MacColl aboard the ship, that he represented the interests of anyone but the material witnesses. Indeed, by obtaining use immunity, he ensured that none of the material witnesses would face criminal liability, and he ultimately secured relief in the form of the taking of the material witnesses' depositions, paving the way for their return to their homelands.

Moreover, in addition to the four material witnesses, Attorney MacColl represented five other crew members, not named here, who were subject to the same agreement between the government and MST/Reederei and likewise functionally detained in the same Portland-area hotel. Each of those individuals, as well, received a grant of use immunity from the government in exchange for his grand jury testimony, was released from the agreement, and was allowed to return to his home country.

If there was any conflict between the witnesses collectively and the *M/V Marguerita's* owner and/or operator, it was not apparent from the record or proceedings before me.

The government next argued that conflicting interests might exist among the witnesses themselves because of the potential for future criminal liability arising out of the alleged

misconduct that formed the basis of the investigation and indictments in the case against the corporate defendants.

I confirmed at hearing that each witness had been granted use immunity from prosecution in exchange for his grand jury testimony. In its motion, and at hearing, the government failed to advance any reason to assume that any of the material witnesses was a potential future target of criminal prosecution. Accordingly, any concern that the material witnesses might have had conflicting interests among themselves was effectively mooted. To the extent that a possibility of future criminal liability existed, I found that it was too remote to serve as a ground for further inquiry into this sub-issue.

In addition, when I questioned the material witnesses during the August 24, 2017, hearing, each reconfirmed, as he had during his initial appearance following the issuance of the material witness warrants, that he desired Attorney MacColl's continued representation. I informed each that he had a right to his own attorney, without cost, and that, by virtue of Attorney MacColl's collective representation, no individual witness could engage in a confidential conversation with him, whereas if each witness retained his own counsel, his conversations with that counsel would remain confidential. After I confirmed that each witness understood his right to separate counsel, each stated that he wished to retain the services of Attorney MacColl. To the extent that the government was concerned that a conflict existed by virtue of Attorney MacColl's representation of multiple witnesses, each witness's waiver in open court resolved that issue.

The government also argued that a potential conflict existed because it was unclear if one of the corporate entities involved in this case was paying Attorney MacColl's fees associated with his representation of the material witnesses. I presumed that Attorney MacColl was aware of the ethical canons in force in every case, including Maine Rule of Professional Conduct 1.8(f), and,

indeed, his written response to the government's motion cited that rule.  *See* Objection to Motion for Conflict Counsel (ECF No. 3), *In re Motion for Conflict Counsel*, at 1.  Rule 1.8(f) provides:

> A lawyer shall not accept compensation for representing a client from one other than the client unless:
>
> (1) the client gives informed consent;
>
> (2) there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship; and
>
> (3) the confidences and secrets of a client are protected as required by Rule 1.6.

Me. R. Prof. Conduct 1.8(f).

These requisites were met here.  Most importantly, Attorney MacColl's work in this case demonstrated his pursuit of his clients' interests, including their immediate release from the material witness warrants, whatever the source of his fees.

Finally, the government raised a concern that Attorney MacColl might have potentially divided loyalty because, at some point, under the applicable statutes governing the conduct in which the owner and operator of the *M/V Marguerita* are alleged to have engaged, the material witnesses might be entitled to a monetary award tied to any fines or fees assessed against the corporate defendants.  *See* Conflict Motion at 5-6.  As of August 24, 2017, the corporate defendants had not yet been arraigned, let alone found guilty and assessed a fine.  To my knowledge, the witnesses have not filed any action seeking a share of the proceeds from compensation paid by the corporate defendants.  Because this argument was too speculative to present any actual or potential conflict issue, I did not consider it further.

## B. The Material Witnesses' Petitions for Depositions

As noted above, each witness moved for various forms of relief from his status as a material witness, including a court order that the government take his deposition in accordance with Federal Rule of Criminal Procedure 15 to facilitate his release.[5]

The statute governing material witnesses is 18 U.S.C. § 3144. It provides:

> If it appears from an affidavit filed by a party that the testimony of a person is material in a criminal proceeding, and if it is shown that it may become impracticable to secure the presence of the person by subpoena, a judicial officer may order the arrest of the person and treat the person in accordance with the provisions of section 3142 of this title [governing detention and release of criminal defendants]. No material witness may be detained because of inability to comply with any condition of release if the testimony of such witness can adequately be secured by deposition, and if further detention is not necessary to prevent a failure of justice. Release of a material witness may be delayed for a reasonable period of time until the deposition of the witness can be taken pursuant to the Federal Rules of Criminal Procedure.

18 U.S.C. § 3144.

Federal Rule of Criminal Procedure 15 provides, in relevant part:

> A witness who is detained under 18 U.S.C. § 3144 may request to be deposed by filing a written motion and giving notice to the parties. The court may then order that the deposition be taken and may discharge the witness after the witness has signed under oath the deposition transcript.

Fed. R. Crim. P. 15(a)(2). The witnesses invoked the first sentence of Rule 15(a)(2).

When a material witness moves for a deposition pursuant to Rule 15(a)(2), he must be released if his testimony can be adequately secured by deposition, and further detention is not necessary to prevent a failure of justice. *See, e.g., Torres-Ruiz v. U.S. Dist. Court for S. Dist. of Calif.*, 120 F.3d 933, 935 (9th Cir. 1997). Material witnesses need not demonstrate "exceptional circumstances to effectuate their own depositions." *United States v. Allie*, 978 F.2d 1401, 1404

---

[5] For ease of reference, I shall refer solely to the *Zak* Warrant Motion and the response thereto filed by the government. The points made by both sides in the *Zak* case are substantially similar to those advanced in the *Hornof*, *Kordic*, and *Demcak* cases.

n.4 (5th Cir. 1992) (citation and internal quotation marks omitted). *See also, e.g., United States v. Li*, No. 08-CR-212, 2008 WL 4104062, at *3 (E.D. Wis. Sept. 4, 2008) (humanitarian costs of prolonging detention of alien material witnesses itself is an exceptional circumstance).

The government argued that the material witnesses were not "detained" for purposes of the statute and the rule because they were not incarcerated. *See* Government's Response in Opposition to Defendant's [sic] Motion To Discharge Warrants ("Warrant Response") (ECF No. 26), *Zak*, at [15] n.10. That contention, carried to its logical extreme, would permit the government to prevent foreign nationals from leaving this country indefinitely, particularly as the government also contended at hearing that, as a matter of law, the warrants could not be discharged until at least the end of trial, should the grand jury investigation in connection with which the material witnesses' liberty was constrained result in the issuance of an indictment.

That could mean, in practical terms, that such material witnesses could be kept away from their homes, in a foreign country where they do not speak the language and have no social connections and no way to engage in the line of work in which they are experienced, or indeed any remunerative work, for periods of well over a year. The argument, carried to its logical extreme, also means that a material witness who is jailed would be able to seek discharge through deposition, while a material witness subject to a warrant, but able to stay in a motel and walk to a grocery store or recreation, would not have that option. Yet, as a practical matter, that individual also is detained. *See, e.g., United States v. Dalnave Navigation*, Criminal No. 09-130, 2009 WL 743100, at *2 (D.N.J. Mar. 18, 2009) (material witnesses lodged at hotel with no passports, little or no transportation, little knowledge of English, limited knowledge of customs and mores of this

11

country, and desiring to return home to their families were functionally detained for purposes of section 3144 and Rule 15).[6]

The government provided no authority in support of its position, apart from "a strict reading of the rule," Warrant Response at [15] n.10, and I located none. In rejecting that argument, I also necessarily rejected the government's contention that the material witnesses "lack[ed] standing" to seek to have their depositions taken under Rule 15, which was predicated on the argument that they were not detained. *Id*.

With indictments secured as of August 24, 2017, and trial contemplated, the government further argued that the material witnesses should be detained until they testified at trial. In its briefs and at hearing, the government contended that the witnesses' testimony was necessary for trial and that they should be detained in the interim because the government had "no ability to compel the appearance of the Petitioners should they leave the United States." *Id*. at [8]. This was so, the government argued, because the relevant international accords governing the mutual assistance of countries in the prosecution of criminal matters "do not contain mechanisms to compel [the witnesses] to return to the District of Maine to testify as witnesses in further proceedings." *Id*. at [8]-[9].

However, assuming that is so, the government failed to provide a compelling reason why a Rule 15 deposition would not permit the admission of the testimony of the material witnesses at trial, affording them the opportunity to return to their home countries rather than continuing to be detained in hotel rooms in Greater Portland, possibly for months, pending trial.

---

[6] In *Allie*, alien material witnesses were given the option, after being deposed, "of remaining in the United States with a work permit pending trial" or returning to their homeland after giving assurances that they would return to testify at trial. *Allie*, 978 F.2d at 1403. No such offer was made in this case to my knowledge. In much of the caselaw cited by the government, the courts speak of the obligations of United States citizens to testify in criminal proceedings, whether they wish to or not. The material witnesses in this case do not enjoy the advantages of Unites States citizenship and the reciprocal obligation thus carries little benefit in their instance.

The government contended that, because depositions taken pursuant to Rule 15 would not be admissible at trial, absent a showing that the material witnesses were unavailable to testify, there was a risk that the trial court might rule that the government had not taken sufficient steps to secure the witnesses' presence at trial, if they were released from the arrest warrants following their depositions. *See id*. at [16]-[17]. I was unpersuaded that this risk outweighed the material witnesses' liberty interests, deeming it dubious, in view of the government's objection to their release following deposition and its representation that it would lack a formal mechanism to compel their attendance were they released to their home countries, that this court would rule against any request to admit the witnesses' depositions at trial on the basis of their unavailability, so long as the government made reasonable efforts to convince them to return to testify in person.[7]

Indeed, Rule 15 exists to strike a balance between the differing needs and rights presented here – the material witnesses' right not to be detained for an undue period of time and the government's need to present its case with admissible evidence. The rule grants courts the authority to strike this balance, and I did so here. The government's further concern, expressed in its response, that a Rule 15 deposition was not ripe because the rule contemplates a defendant's right to be present at the deposition, *see* Warrant Response at [16], was mooted as of the time of hearing by the fact that MST and Reederei had been indicted on the above-described charges. At

---

[7] If the government "adequately preserve[s] [a criminal defendant's] constitutional rights when [a Rule 15 deposition is] taken," then "the prior testimony of the now-unavailable witnesses is admissible at trial pursuant to Rule 804(b)(1) of the Federal Rules of Evidence and *Crawford v. Washington*, 541 U.S. 36 . . . (2004)." *United States v. Caramadre*, 882 F.Supp.2d 295, 299 (D.R.I. May 15, 2012) (footnote omitted). In view of the importance of a criminal defendant's constitutional right to confront witnesses against him, the Supreme Court has held that "a witness is not 'unavailable' for purposes of the [unavailable witness] exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." *Barber v. Page*, 390 U.S. 719, 724-25 (1968). *See also* Fed. R. Evid. 804(a)(5) (a witness is unavailable if, *inter alia*, the witness "is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure . . . the [witness's] attendance").

hearing, I received assurances from Attorney MacColl that counsel for criminal defendants MST and Reederei were expected to be available to attend the material witnesses' depositions.[8]

The question then became one of timing. In at least two other federal jurisdictions, time limits for the detention of material witnesses have been established by standing orders: 45 days in the Southern District of Texas, *see Aguilar-Ayala v. Ruiz*, 973 F.2d 411, 415 (5th Cir. 1992), and 60 days in the Western District of Texas, *see Allie*, 978 F.2d at 1403. In this case, the material witnesses had been in the United States since July 7, 2017, either onboard the ship or functionally detained at a local hotel, and had been subject to the material witness warrants since July 17, 2017, or later. As of the date of the hearing, it appeared that the material witnesses would have been detained for as long as two months by the time depositions reasonably could be scheduled.

Accordingly, I ordered that the government take the deposition of each material witness within 30 days of my order, following which the material witnesses' passports were to be returned to them and they were to be allowed to return to their home countries.

### C. Other Motions for Relief

#### 1. Government's Motion To Quash in *Zak*

In anticipation of the August 24, 2017, hearing on his warrant motion, material witness Zak served subpoenas on four officials of the United States Department of Homeland Security commanding both their testimony at hearing and the production of documents. *See* Motion To Quash at 1-2. The government moved to quash the subpoenas, *see id.* at 7-13, and, at hearing, I deferred ruling on them at Attorney MacColl's request. I now clarify that, because I granted relief to all of the material witnesses by ordering the government to take their depositions pursuant

---

[8] The government also asserted that the material witnesses were "not innocent, uninvolved ship passengers[.]" Warrant Response at [17]. However, no suggestion was made that any of the material witnesses was a target of the investigation involving the *M/V Marguerita*. Indeed, as noted above, the government represented at hearing that each had been granted use immunity from criminal prosecution in exchange for his grand jury testimony.

Federal Rule of Criminal Procedure 15, following which their passports were to be returned to them and they were to be allowed to depart the United States, the Motion To Quash is moot.

### 2. Material Witnesses' Alternative Requests for Relief re: Arrest Warrants

In their motions seeking to dissolve the arrest warrants issued against them, the material witnesses advanced alternative grounds upon which the court could grant relief. *See generally* Warrant Motions. I now clarify that I granted in part those motions, to the extent that I afforded the relief discussed above, and otherwise mooted them in part.

### 3. Material Witnesses' Motion for Return of Property

As noted above, the material witnesses also collectively moved for the return of passports and visas confiscated by the United States Coast Guard. *See* Motion To Return Property. As I noted at hearing, my grant of the relief discussed above mooted that motion.

## III. Conclusion

For the foregoing reasons, at hearing on August 24, 2017, I **GRANTED** the Conflict Motion **IN PART**, to the extent that I examined the material witnesses regarding the possible existence of a conflict, and otherwise **DENIED** it, **GRANTED** the Warrant Motions **IN PART**, to the extent that I **DIRECTED** that the depositions of the material witnesses be taken within 30 days, following which their passports were to be returned to them and they were to be permitted to depart the United States, and **DEEMED** the Motion To Return Property **MOOT**. My partial grant of the relief requested in the Warrant Motions also **MOOTED** those motions to the extent that they sought additional or alternative relief and **MOOTED** the Motion To Quash.

Dated this 19th day of November, 2017.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge